UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA SMITH, et al.,<br><br>Defendants. | Case No. 16-cv-03733-JD<br><br>**ORDER RE SUMMARY JUDGMENT** |

United Financial Casualty Company ("UFCC") brought this declaratory judgment action for a determination of its obligations in an underlying California state lawsuit based on a commercial auto insurance policy issued to defendant Joshua Smith. The underlying case involves a car accident on August 5, 2014, in which Joshua's son, Brenton Smith, was driving his 1999 Subaru back home from the beach with friends. Brenton worked for his father's concrete company and had his work tools in the car. The main dispute is whether the "non-owned auto" provision in Joshua's commercial policy covered the Subaru at the time of the accident.

Several of the defendants named by UFCC defaulted, including Brenton, Joshua, Jennie Smith, Joshua's business entities (Smith's Concrete, Inc. and/or Smiths Concrete Construction, Inc.), and Lariza Gonzalez. Dkt. Nos. 36, 37, 44, 76. UFCC filed a motion for summary judgment against the two remaining defendants, Nathan Richard and Chonondra Gialdini, who were injured passengers and are the plaintiffs in the state action. Dkt. No. 74. The motion is granted.

**BACKGROUND**

Joshua Smith is a licensed cement contractor and the owner of Smiths Concrete Construction, Inc., which he incorporated as a business in 2013. Joshua Smith Dep. (Dkt. No. 74-

2) at 10:3-11:8. At the time of the accident, the company had approximately 10-14 employees, including his son Brenton Smith who worked as a cement mason. *Id.* at 14:5-15:6, 20:1-4. The employees used their own vehicles to get to jobsites and were required to have their own masonry tools. *Id.* at 20:5-24. Brenton drove his 1999 Subaru for this purpose and generally kept his tools in his car at all times during the work week, even during personal use. Dkt. No. 71 ¶¶ 5-7. He was a registered owner of the 1999 Subaru, along with his mother Jennie Smith. *Id.* ¶ 4.

On August 5, 2014, Brenton was working at a jobsite for Smiths Concrete Construction, Inc. *Id.* ¶ 8. He left work around 2:00 p.m. and drove home where he lived with his parents in Ukiah. *Id.* ¶¶ 8-9. Later that night, he went to a beach near Fort Bragg with friends in his Subaru. *Id.* ¶ 15. Before midnight, Brenton drove Chonondra Gialdini, Nathan Richard, and Lariza Gonzalez home from the beach. *Id.* ¶¶ 19-20. He lost control of the Subaru and it crashed. *Id.* ¶ 21. He was not working when he left for the beach, at the beach, or on his way back to Ukiah before the accident. *Id.* ¶¶ 13, 18, 24. At the scene of the accident, Brenton reported to a California Highway Patrol officer that the weight of the tools and equipment in the Subaru "caused the car to bottom out." *Id.* ¶ 25.

In 2015, Richard and Gialdini filed personal injury lawsuits in Mendocino County Superior Court against Joshua, Jennie, Brenton, and Smiths Concrete Construction, Inc. *Id.* ¶¶ 29-30; *see also* Dkt. No. 71-2 at 1-7. The cases have been consolidated for all purposes and are referred to here as the *Richard* litigation. Dkt. No. 71 ¶ 31.

On the day of the accident, Joshua Smith carried a commercial auto insurance policy issued by UFCC. *Id.* ¶ 2. Joshua was the only named insured on the declarations page. *Id.*; Dkt. No. 71-1 at 5. The scheduled insured vehicles on the policy were a 2000 Ford F350, a 2011 Dodge Ram 3500, and a 1998 Chevrolet C3500/K3500. Dkt. No. 71-1 at 6. The rated drivers on the policy included Joshua, Jennie, and Jeremiah Douglas. *Id.* Under the liability coverage part of the policy, UFCC promised to defend and indemnify an "insured" against bodily injury and property damage claims arising out of the ownership, maintenance or use of an "insured auto." *Id.* at 16.

Joshua added an Employer's Non-Ownership Liability Endorsement so that the definition of an "insured auto" was modified to include a "non-owned auto." *Id.* at 38-39. A "non-owned auto" is defined as:

> an auto that you do not own, lease, hire, rent, or borrow, and that is used in connection with your business. This includes autos owned by your employees, partners (if you are a partnership), members (if you are a limited liability company), or members of their households, but only while such autos are used in your business or your personal affairs.

*Id.* at 39. "You," "your" and "yours" refer to the named insured shown on the declarations page, Joshua Smith. *Id.* at 15 ¶ 17.

UFCC filed this action for a declaration that it has no duty to defend or indemnify the Smith family members or the corporate entities against claims arising out of the car accident. Dkt. Nos. 1, 55. Richard and Gialdini filed counterclaims seeking competing declarations. Dkt. Nos. 20, 66.

**DISCUSSION**

The parties' primary dispute is whether the "non-owned auto" provision covered the 1999 Subaru at the time of the accident. A plain reading of the policy language shows that it does not.

Insurance policies are a species of contract, and they are construed by the "tried and true rules" of California contract interpretation. *See Compass Ins. Co. v. Univ. Mech. & Eng'g Contractors, Inc.*, No. 14-cv-04295-JD, 2016 WL 1169312, at *2 (N.D. Cal. Mar. 25, 2016). The "non-owned auto" provision is a common feature in commercial insurance policies and is meant to "provide employers with protection from liability based on the doctrine of respondeat superior arising out of an employee's commission of a tort while using their own personal vehicles in the employer's business." *Union Standard Ins. Co. v. Hobbs Rental Corp.*, 566 F.3d 950, 954 (10th Cir. 2009) (internal quotation omitted).

The UFCC provision here covers "autos owned by [Joshua Smith's] employees … but only while such autos are used in [Joshua Smith's] business or [Joshua Smith's] personal affairs." Dkt. No. 71-1 at 39. There is no dispute that the Subaru was at times used "in connection with" Joshua Smith's business, as Brenton used it to carry tools and get himself to and from jobsites. But

3

defendants' effort to stretch that fact for coverage of an accident related to an after-hours party goes too far. The phrase "in connection with" must be read in context with the entire provision. *See Compass*, 2016 WL 1169312, at *2. Other courts have read similar clauses to mean "while performing company-related work," *Hobbs*, 566 F.3d at 953, "to be engaged in [the policy-holder's] business," *State Farm Fire & Cas. Co. v. Lezina*, 168 F. Supp. 3d 900, 905-06 (E.D. La. 2016) (internal quotation omitted), or while "acting in" the employer's affairs, *Pham v. Hartford Fire Ins. Co.*, 419 F.3d 286, 290 (4th Cir. 2005). These are common-sense readings of ordinary words, and they lead to the conclusion that UFCC's coverage obligations extend no further than autos used for Joshua's business or personal affairs at the time damages arise.

Even assuming purely for discussion and in defendants' favor that Brenton was employed by his father, rather than by Smiths Concrete Construction, Inc., there can be no serious dispute that he was not performing work for Joshua's business or Joshua's personal affairs when the accident occurred. Brenton was driving home with friends from a party at the beach. There is no evidence that Brenton went to the beach at Joshua's request. There is no evidence that Joshua instructed all employees to carry tools in their cars at all times for his convenience or that employees were on call 24 hours a day. Brenton was engaged solely in a personal social outing, and so the Subaru was not "used in" the business or personal affairs of his employer at the time of accident. *See Lincoln Gen. Ins. Co. v. Gateway Sec. Servs., Inc*., No. 06-cv-01143-OWW, 2007 WL 3203020, at *10-13 (E.D. Cal. Oct. 29, 2007).

Defendants' focus on the presence of work tools in the Subaru is misdirected. That the tools Brenton carried were used for Joshua's business does not mean that the Subaru was being used for the business. To hold otherwise would effectively rewrite the non-owned auto endorsement to extend coverage in a way that neither party anticipated or bargained for. And defendants did not present any case law supporting the theory that an employee's decision to keep work tools in his personal car means that car is engaged in the employer's business at all times.

Richard's suggestion that UFCC is on the hook on "community property" grounds is equally misplaced. *See* Dkt. No. 80 at 10. Richards says that Brenton was an "insured" because Joshua was an owner of the Subaru under California community property law and because

4

Brenton was driving the Subaru permissively. *Id.* Under the UFCC policy, "insured" includes "[a]ny person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow except … [t]he owner …" Dkt. No. 71-1 at 16. But the undisputed facts show that Brenton was a registered co-owner of the car, and so could not have been an "insured" or given permission from Joshua to drive the car. *See Venne v. Standard Accident Ins. Co.*, 171 Cal. App. 2d 242, 246 (1959); *see also Bohannon v. Aetna Cas. & Sur. Co.*, 166 Cal. App. 3d 1172, 1176 (1985).

Summary judgment is granted and UFCC has no duty to defend or indemnify in the *Richard* litigation under the commercial auto policy. *See* Dkt. No. 71-2 at 1-7; Dkt. No. 71-1; *see also Compass*, 2016 WL 1169312, at *5-6. Judgment will be entered for UFCC. The case is closed.

**IT IS SO ORDERED.**

Dated: April 11, 2017

JAMES DONATO
United States District Judge